ROBERT G. HAZELDINE

*v.*

LUCY C. McVEY et al.

[Filed June 25th, 1904.]

R., being the owner of two lots, conveyed one of them to M., with a right of way over the other. P., who held a paramount mortgage on both lots, gave to M. a deed of release, purporting to "grant, release, quitclaim and set over" the lot conveyed, "together with the hereditaments and appurtenances thereto belonging," but therein stipulating "that the rest of the lands in said mortgage specified may remain to the said party of the first part as heretofore." On foreclosure—*Held,* (1) that the question whether the deed of release operated as a grant of a right of way out of the estate of the mortgagee was a legal one; (2) that it did not, in fact, so operate, and (3) that the answer, therefore, did not set up any defence to the bill.

---

On final hearing.

*Mr. William H. Speer,* for the complainant.

*Mr. Winfield S. Angleman,* for the defendants.

STEVENS, V. C.

On January 1st, 1894, Dan S. Roberts and wife conveyed to John H. McVey a lot of land in Plainfield. The grantor owned an adjoining lot, and in his deed of conveyance to McVey he granted to him a right of way therein appurtenant to the lot conveyed. On January 2d, 1894, the Prudential Insurance Company, who held a mortgage on both lots, gave to John H. McVey a deed of release. The release purported to "grant, release, quit-claim and set over" the lot conveyed, "together with the hereditaments and appurtenances thereto belonging." The question raised by the answer is whether by these words the deed of release operated to fasten the incorporeal hereditaments upon the interest and estate of the mortgagee in the lot not released against the express provision therein contained, "that the rest of the lands in the said mortgage specified may remain to the said party of the first part as heretofore."

It seems to me that the question thus raised is a purely legal one. The bill is filed merely to foreclose the equity of redemption. The purchaser at the foreclosure sale will take the same title that the mortgagee would have taken in a strict foreclosure. *Gen. Stat. p. 385* § *72.* This title will be that which the mortgagor gave to the mortgagee, stripped of all equity of redemption and modified only in so far as the mortgagee or his assigns by subsequent conveyances saw fit to modify it. The decree will be that the defendants "stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to the said mortgaged premises when sold *as aforesaid* under this decree," and the description of the premises to be sold will be that contained in the mortgage itself, excepting thereout such part thereof as may have been released by the release of January 2d. Where there are questions of legal title in dispute it is not the province of a foreclosure suit, under our system of jurisprudence, to settle them. Its appropriate end is to bar the equity of redemption. Questions of title arising after foreclosure must be settled by a judge and jury in a court of law.

With this view of the matter it may seem out of place to

express any opinion on the merits of the question raised. As, however, the argument was confined to the merits it may not be altogether improper for me to say that I cannot see how that force can be given to the word "appurtenances" which counsel for the defendant contends for. There are two distinct estates involved, that of the mortgagor and that of the mortgagee. Their characteristics are fully described in the recent case of *Colton* v. *Depew, 59 N. J. Eq. (14 Dick.) 126; 60 N. J. Eq. (15 Dick.) 455.* It would seem quite clear that when the owner of the equity conveyed to McVey and gave to him the easement in question he affected, and could only affect, his own estate. He could not in anywise affect the paramount legal estate already subsisting in the mortgagee. When, on the other hand, the mortgagee released, he dealt with *his* estate, viz., the paramount legal estate, and the question is whether he intended to subject that estate to the easement. If he did, he must have newly created such an easement in the estate which he held, for it did not exist, so far as he was concerned, before. It is perfectly well settled that a right of way will not be created by the mere use of the word "appurtenances." *Stuyvesant* v. *Woodruff, 21 N. J. Law (1 Zab.) 133; Fetters* v. *Humphreys, 16 N. J. Eq. (4 C. E. Gr.) 471.* This being so, there is nothing in the deed of release upon which to contend that the easement existing in the equity of redemption was extended to the legal estate belonging to the mortgagee. The easement was, indeed, subsisting at the time the release was given, for it had been created the day before; but it was an easement attached, and attached only, to the equity of redemption—to the estate of the mortgagor, and with this estate the mortgagee had no concern. It does not appear that he had any notice, either actual or constructive, of the existence of this easement. To assume that he had it and that he intended to enlarge the easement in such a way as to fasten it upon his own estate would be not only unwarranted in legal theory but unjust. The very language of the release "that the rest of the land in the said mortgage specified may remain to the said party of the first part *as heretofore,"* would seem to

indicate that the mortgagee intended to retain to himself what he had not in terms and by unambiguous description parted with.

On either grounds I think defendants' answer does not interpose a partial defence to complainant's bill.